UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

MANDEL BROCK,

                              Plaintiff,

     -against-

THE CITY OF NEW YORK, NYPD, MICHAEL R.
BLOOMBERG, RAYMOND W. KELLY,
Christophe O'Brien Tax # 950966, Adam Hazan,
John and Jane Doe 1- 113

                             Defendant(s)
------------------------------------------------------------X

Docket # 13-CIV-4259

**AMENDED COMPLAINT**

PLAINTIFF DEMANDS A TRIAL BY JURY

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/11/2014

Plaintiff Mandel Brock, as and for his Complaint, hereby allege as follows:

### PARTIES, VENUE and JURISDICTION

1. At all times hereinafter mentioned plaintiff Mandel Brock, a black adult male, was a resident of Kings County, within the State of New York.

2. At all relevant times hereinafter mentioned, defendant City of New York ("New York City"), was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York and acts by and through its agencies, employees and agents, including, but not limited to, the New York City Police Department ("NYPD"), and their employees.

3. At all relevant times hereinafter mentioned, defendant Christophe O'Brien, whose tax number is 950966, Shield # 12221, whose service address is 153 East 67th Street, New York, NY 10065 was employed by and acting on behalf of the City of New York as a member of the NYPD. Christophe O'Brien is sued herein in his individual and official capacities.

4. At all relevant times hereinafter mentioned, defendant Sergeant Adam Hazan, Shield # 616, whose service address is, 151 West 100th Street, New York, NY 10025, was employed by and acting on behalf of the City of New York as a member of the NYPD. Adam Hazan is sued herein in his individual and official capacities.

5. At all relevant times hereinafter mentioned, defendant Michael R. Bloomberg, whose tax numbers are presently unknown, was employed by and acting on behalf of the City of New York as the Mayor of New York City and whose stance on the discriminatorily repulsive act of "stopping and frisking" blacks and latinos is widely known through his public statements to the media in the form of television, radio, and newspapers regarding the "stop and frisk" practice. Michael R. Bloomberg is sued herein in his individual and official capacities.

6. At all relevant times hereinafter mentioned, defendant Raymond W. Kelly, whose tax and shield numbers are presently unknown, was employed by and acting on behalf of the City of New York as a member of the Commissioner of the NYPD and whose stance on the discriminatorily repulsive act of "stopping and frisking" blacks and latinos is widely known through his public statements to the media in the form of television, radio, and newspapers regarding the "stop and frisk" practice.

7. Raymond W. Kelly stated on the record that he wanted "black and latino youth to be afraid when they stepped out of their house." He stated this to New York Senator Eric Adams and be is terrorism and in violation of the Home Grown Terrorism Act (House Resolution Law 555). Raymond W. Kelly is sued herein in his individual and official capacities.

8. At all relevant times hereinafter mentioned, defendants John and Jane Does 1-6 are individuals whose identity is not presently known to plaintiff and who were employed by and on duty with the City of New York as members of the NYPD. John and Janes Does 1-6 are sued herein in their official and individual capacities.

9. This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331, 1343 and 1367, and 42 U.S.C. § 1983.

10. Venue is properly laid, pursuant to 28 U.S.C. Section 1391, et seq. in the Southern District of New York, where the plaintiff and defendant City of New York reside, and where the actions complained of herein occurred.

## RELEVANT FACTS

1. At all relevant times herein, plaintiff resided in an apartment within the jurisdictional boundaries of New York State.

2. On or about August 17, 2012, at or about 12:30 a.m., Mandel Brock was in front of playground, where his associates, Tracy, Keisha, Stacey Jones, and James Vincent, were awaiting, located at 111th Street between Lenox and Fifth Avenue, New York, New York.

3. Neither plaintiff nor his associates were engaged in any criminal or unlawful conduct nor was there any reasonable basis to believe that they was engaged in any such conduct.

4. At or about this time, defendant O'Brien approached claimant, while defendant, Adam Hazan, remained in the patrol vehicle, both defendant O'Brien and defendant Adam Hazan were wearing NYPD uniforms.

5. Claimant was unlawfully stopped and questioned, by defendant, O'Brien, who demanded that Brock produce identification.

6. Plaintiff, Mandel Brock, in turn asked the defendant, O'Brien, why he was detaining him and for what constitutional reason did defendant have for demanding the production of Plaintiff's "papers."

7. Upon defendant's, O'Brien, statement: "because I am telling you to," Plaintiff, Mandel Brock, refused to produce his identification, telling the officer that they had no right to demand it and that he was not obliged to produce for the Supreme Court previously ruled that "a citizen has the right to travel freely in his community without interference from the authorities."

8. Upon Plaintiff's declaration of his rights defendant, O'Brien, informed Mr. Brock that he would be arrested due to failing to comply with a "lawful" order.

9. Plaintiff continued to refuse, stating, in effect, that the defendants had no right to compel him to produce identification, the defendants radioed for backup, told plaintiff to get against the gate and unlawfully detained plaintiff.

10. After Plaintiff's unlawful detention he continued to "belligerently assert" and "vigorously defend" his lawful Human and Constitutional Rights whereupon defendant, O'Brien, put plaintiff into an illegal sleeper hold which caused Plaintiff, Mandel Brock, to lose consciousness.

11. Plaintiff was then beaten which caused claimant to sustain injuries to his face that required stitches.

12. All the actions engaged in by the NYPD and its members were carried out without any lawful basis or justification, or any reasonable basis to believe that such conduct was lawful or justified. was then

13. The Doe defendants were also uniformed NYPD officers.

14. Plaintiff was transported to the 28th Precinct, bleeding profusely from his injuries and thrown into a cell without medical attention.

15. Plaintiff's nephew, Thamar Burke, witnesses Stacey Jones, Antoinette Powell, and James Vincent arrived at the precinct and demanded that plaintiff receive medical attention.

16. Antoinette Powell called an ambulance that was sent away by the one of the Doe defendants at the 28th Precinct.

17. Eventually Plaintiff was transported to Harlem Hospital for treatment.

18. While receiving treatment Plaintiff was visited by two officers from the Internal Affairs Division (IAD) of the NYPD.

19. When Plaintiff asked (IAD) officers why they were there it was stated: "You were injured while you were handcuffed and restrained so we have to investigate."

20. Plaintiff was detained for a number of hours at the station house, during which time he was strip-searched. He was then transported to New York County Central Booking, where he was detained for many more hours.

21. At no time was there any basis in law or fact to justify the strip-search of plaintiff, nor was it reasonable for defendants to believe such a basis existed.

22. At no time did there exist sufficient legal cause to seize plaintiff, nor could the defendants have reasonably believed that such cause existed.

23. At no time was there any basis in law or fact to justify the sleeper hold and beating of Plaintiff, Mandel Brock, nor was it reasonable for defendants to believe such a basis existed.

24. Despite the absence of any legal cause for plaintiff's seizure, arrest choking, beating and detention, one of the defendants issued or attempted to issue a complaint against the plaintiff, alleging that he committed the crimes of trespass and disorderly conduct.

25. These allegations were materially false and defendants knew them to be false at the time they were made. At no time thereafter did any defendant retract these allegations.

26. The remaining defendants knew that there was no legal basis to seize, arrest or detain plaintiff, and that any claimed criminal violation would necessarily have to be based on materially false factual claims. Yet, none of the remaining Doe defendants took any steps to challenge the arrest, detention and attempted criminal prosecution of plaintiff.

27. The District Attorney dismissed the charges and Mandel Brock was released after having endured unnecessary and unlawful imprisonment and mistreatment.

28. John Does 1-8 intentionally and deliberately gave false statements, failed to file accurate or corrective statements, or otherwise failed to report the conduct of the defendants who engaged in the misconduct described herein as required.

29. Defendants' actions were designed to cover up their misconduct or that of their fellow officers, secure the prosecution of plaintiffs, and frustrate plaintiffs' ability to seek redress for the misconduct engaged in by the defendants.

30. That at all times relevant herein, the defendants, including the Doe defendants, were acting within the scope of their employment, and their acts were done in furtherance of the City of New York's interests and without legal justification or excuse.

## FIRST CAUSE OF ACTION

31. Plaintiff repeats the allegations contained in paragraphs "1" through "30" above as though stated fully herein.

32. The individual defendants willfully and intentionally seized, searched, imprisoned and arrested plaintiff without probable cause, and without a reasonable basis to believe such cause existed.

33. Plaintiff was aware of and did not consent to his confinement.

34. Defendants' conduct was motivated by and retaliation for, at least in part, to plaintiff's spoken assertion of his rights.

35. By so doing, the individual defendants, individually and collectively, subjected the plaintiff to false arrest and imprisonment, unlawful searches of person and property, and denial of due process, and thereby violated, conspired to violate, and aided and abetted in the violation of plaintiff's rights under the First, Fourth and Fourteenth Amendments of the United States Constitution.

36. By reason thereof, the individual defendants have violated 42 U.S.C. §1983 and caused plaintiff to suffer emotional and physical injuries, mental anguish, incarceration and the loss of liberty, and the loss of his constitutional rights.

## SECOND CAUSE OF ACTION

37. Plaintiff repeats the allegations contained in paragraphs "1" through "41" above as though stated fully herein.

38. Defendant City of New York was responsible for ensuring that reasonable and appropriate levels of supervision were in place within and/or over the NYPD.

39. Defendant was deliberately indifferent to the risk that the inadequate level of supervision would lead to the violation of individuals' constitutional rights in general, and caused the violation of plaintiff's rights in particular.

40. The Impact Task Force was comprised of rookies and officers who had virtually no job experience and who were placed on the street on foot and motor patrols with little to no supervision.

41. The defendant was on notice that Impact Task Force members were put in the field without adequate training and supervision, and that as a result of their lack of training and supervision, these officers engaged in wrongful and otherwise unjustified arrests, either due to their lack of knowledge and experience, or due to the absence of supervisors who could better instruct and control these officers.

42. Even if these officers were not members of the Impact Task Force, the municipal defendant was on notice that members of the NYPD have been routinely and regularly stopping and questioning individuals on suspicion of trespassing without regard as to whether any lawful basis existed for such a stop. This pattern and practice is pursuant to an NYPD policy.

43. This policy was formally crafted and implemented by the NYPD. Alternatively, the defendant's failure and refusal to cure such conduct constitutes a tacit endorsement of this policy.

44. The defendants' actions towards plaintiff in this matter were the result of this policy, which plaintiff knew or should have reasonably foreseen.

45. By reason thereof, defendant has violated 42 U.S.C. §1983 and caused plaintiff to suffer emotional and physical injuries, mental anguish, incarceration and the loss of liberty, and the loss of his constitutional rights.

## THIRD CAUSE OF ACTION

46. Plaintiff repeats the allegations contained in paragraphs "1" through "45" above as though stated fully herein.

47. The defendants', Raymond W. Kelly, policy concerning the stopping and questioning of individuals inside common areas in apartment buildings is primarily directed at people of color, particularly Black and Latino men and women. In addition, his statement on the record to New York Senator Eric Adams that he wanted "black and latino youth to be afraid when they stepped out of their house" clearly shows that he be in full accordance with the discrimination that permeates the department that he heads and agrees with it.

48. Because the defendants' policy and public statements targets citizens based on race and ethnicity, it is unconstitutional on its face and deprives the citizenry of New York, and plaintiff in particular, of equal protection under the law in violation of his constitutional rights. By reason thereof, defendants have violated 42 U.S.C. §§ 1981 and 1983 and caused plaintiff to suffer emotional and physical injuries, mental anguish, incarceration and the loss of liberty, and the loss of his constitutional rights.

## FOURTH CAUSE OF ACTION

49. Plaintiff repeats the allegations contained in paragraphs "1" through "48" above as though stated fully herein.

50. The defendants', Michael R. Bloomberg, policy concerning the stopping and questioning of individuals inside common areas in apartment buildings is primarily directed at people of color, particularly Black and Latino men and women. In addition, Michael R. Bloomberg's stance on the discriminatorily repulsive act

of "stopping and frisking" black and latino men and women is widely known through his public statements to the media in the form of television, radio, and newspapers regarding the "stop and frisk" practice shows that he be in full accordance with the discriminatory practices of the NYPD and agrees with it.

51. Because the defendants' policy and public statements targets citizens based on race and ethnicity, it is unconstitutional on its face and deprives the citizenry of New York, and plaintiff in particular, of equal protection under the law in violation of his constitutional rights. By reason thereof, defendants have violated 42 U.S.C. §§ 1981 and 1983 and caused plaintiff to suffer emotional and physical injuries, mental anguish, incarceration and the loss of liberty, and the loss of his constitutional rights.

### FIFTH CAUSE OF ACTION

52. Plaintiff repeats the allegations contained in paragraphs "1" through "51" above as though stated fully herein.

53. Defendant's, O'Brien, placing Plaintiff, Mandel Brock, into a sleep hold is clearly illegal. This tactic has been long outlawed by both federal and state authorities due to the likelihood that the subject will die as evidenced with Anthony Baez (1994), Michael Stewat, and Antonio Arecibo (2008).

54. By reason thereof, the individual defendants have violated 42 U.S.C. §1983 and caused plaintiff to suffer emotional and physical injuries, mental anguish, incarceration and the loss of liberty, and the loss of his constitutional rights.

### FIFTH CAUSE OF ACTION

55. Plaintiff repeats the allegations contained in paragraphs "1" through "54" above as though stated fully herein.

56. Defendant's, O'Brien, beating Plaintiff, Mandel Brock, until he sustained injuries that caused plaintiff to require medical attention be clear police brutality which is clearly illegal and this has long been outlawed by both federal and state authorities due to the likelihood the the subject will die.

57. By reason thereof, the individual defendants have violated 42 U.S.C. §1983 and caused plaintiff to suffer emotional and physical injuries, mental anguish, incarceration and the loss of liberty, and the loss of his constitutional rights.

### DEMAND FOR A JURY TRIAL

Pursuant to Fed. R. Civ. P. 38, plaintiffs hereby demand a jury trial of all issues capable of being determined by a jury.

**WHEREFORE**, plaintiff demands judgment against defendants jointly and severally as follows:

i. on the first cause of action actual[1] and punitive[2] damages in an amount to be determined at trial;

ii. on the second cause of action actual[3] and punitive[4] damages in an amount to be determined at trial;

iii. on the third cause of action actual[5] and punitive[6] damages in an amount to be determined at trial;

iv. on the fourth cause of action actual[7] and punitive[8] damages in an amount to be determined at trial;

v. on the fifth cause of action actual[9] and punitive[10] damages in an amount to be determined at trial;

vi. statutory attorney's fees pursuant to, *inter alia*, 42 U.S.C. §1988, disbursements, and costs of this action; and

**WHEREFORE**, plaintiff demands judgment against defendants jointly and severally in accordance listed attached numbered as follows:

Scheduled fine:

Paragraphs 7-14 would amount to $22,550,000.00 (twenty-two million, five hundred fifty thousand dollars).

vii. such other relief as the Court deems just and proper.

Dated: June 10, 2013; Brooklyn, New York

By: Mandel T. Brock, *Sui Juris*
*In Propria Persona, Without Prejudice, Under Protest*
58 Mother Gaston Boulevard, #3
Brooklyn, New York [11233]
347-715-8504

---

[1] Determined by Plaintiff's attachment, "Schedule of Fines."
[2] Determined by Plaintiff's attachment, "Schedule of Fines."
[3] Determined by Plaintiff's attachment, "Schedule of Fines."
[4] Determined by Plaintiff's attachment, "Schedule of Fines."
[5] Determined by Plaintiff's attachment, "Schedule of Fines."
[6] Determined by Plaintiff's attachment, "Schedule of Fines."
[7] Determined by Plaintiff's attachment, "Schedule of Fines."
[8] Determined by Plaintiff's attachment, "Schedule of Fines."
[9] Determined by Plaintiff's attachment, "Schedule of Fines."
[10] Determined by Plaintiff's attachment, "Schedule of Fines."

*THE MANDEL TARIJI BROCK*
*UNINCORPORATED*
58 Mother Gaston Boulevard, #3
Brooklyn, New York
**NON-DOMESTIC**

*MANDELA T. EL-SHABAZZ,*
Authorized Representative

cclr_clr@yahoo.com
347-715-8504

# SCHEDULE OF FINES US GOVT TRUSTEES OR ANY CORPORATE ENITY OR PRIVATE INDIVIDUAL WHEN DEALING WITH THE MANDEL TARIJI BROCK, MANDELA TARIJI EL-SHABAZZ or any derivative thereof

## THE MANDEL TARIJI BROCK 12056 0570 TRUST UNINCORPORATED

1. **$500,000,000** - each *unauthorized use of copyrighted tradename*

2. **$104,000,000** - **(to the estate of)** if *death by gunshot* from the by US policy enforcement officers or a trustee of the public ;

    a) -additionally the face value without interest of all bonds, secured, unsecuritized, private or other lawful bonds, due and owing, in the possession of the debtor, lawfully owing to all secured party creditors, be they known as statutory "*heirs*" or other, payment is to be effected immediately upon to the beneficiaries

3. **$ 52,600,000** - **(to the estate of)** if *death as a result of any encounter whatsoever* with US policy enforcement officers or a trustee of the public

    a) -additionally the face value without interest of all bonds, secured, unsecuritized, private or other lawful bonds, due and owing, in the possession of the debtor, lawfully owing to all secured party creditors, be they known as statutory "*heirs*" or other, payment is to be effected immediately upon to the beneficiaries

4. **$ 25,000,000** - any compelled benefit privilege, performance or *act resulting in injury*

5. **$ 25,000,000** - any compelled benefit privilege, performance or *act accepted by use of threat duress, coercion*

6. **$ 25,000,000** - for any involuntary seizure, capture, possession of *DNA material*

7. **$ 10,000,000** - for each commercial law applied to a real man; *each act to apprehend a real man as a commodity* or trustee; each penalty or levy under any laws repugnant to the *US Constitution*

8. **$ 2,500,000** - if *maimed, injured, disfigured* by a trustee of the public

9. **$ 1,000,000** - every *violation of a right* protected by the Bill of Rights to the *US Constitution*;

1

A

    a)   - every *violation of a right* protected by the Bill of Rights to the United States Denizen Nationals *Constitution for All Refugee Nations*; or

    b)   the United States Denizen Nationals *Codes of International Conduct,* or

    c)   any violation of *any right declared protected,* under the common law of attestation, under seal, in oath, to the *El-Shabazz Family Constitution,* or

    d)   every *injury resulting from any violation of a right* protected by the Bill of Rights to the *US Constitution*

10.   $   500,000 - *any levy* against a member resulting from a claim, liability, compelled benefit privilege or fine by a competent tribunal

11.   $   250,000 - when *a vehicle is towed or transported without consent*;, or

    a)   every single *act of seizing property without warrant*

12.   $   150,000 -to *impound, detain or store a MTBELSTU vehicle* without consent

    a.   - each day of *federal incarceration;*

    b.   - each day of *state incarceration;*

    c.   - every instance of being *forced from home or transportation* against will

13.   $   50,000 - every *compelled compliance with a "legal" instruction* of a trustee of the public;

    a.   - *if served* by any trustee, not a judge or magistrate, *with a summons or citation*

14.   $   25,000 - each item of *personal property seized without a warrant;*

    - each act of *seizure: without a warrant, of fingerprints, or video, or photos;*

    - *each citation issued* against the living person or their private vehicle

15.   $ amount trebled for any violation and or dishonor of The Uniform Commercial Code resulting in pecuniary damages against the foreign estate of **THE MANDEL TARIJI BROCK**

16.   any persona en legis, of, or in, any commercial, or corporate, or chartered or statutory, or registered status, or rendered artificial in any capacity, in order to contract with **THE MANDEL TARIJI BROCK,** and any of same, that operates within any jurisdiction, by code of law or in oath to the constitution of the United States and sovereign estates and States of North America, which then violates those stated policies and laws, and resulting in pecuniary damages against the foreign estate of **THE MANDEL TARIJI BROCK**, those damages are trebled.

2